## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

SCANNING TECHNOLOGIES
INNOVATIONS, LLC,

                    **Plaintiff,**

          **v.**

**BRIGHTPEARL, INC.,**

                    **Defendant.**

**CASE NO: 6:20-CV-114-ADA**


JURY TRIAL DEMANDED


PATENT CASE

**DEFENDANT BRIGHTPEARL, INC.'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT FOR PATENT INFRINGEMENT ON THE GROUND THAT THE
CLAIMS OF THE ASSERTED PATENT ARE INVALID UNDER 35 U.S.C. § 101**

TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     THE '528 PATENT .................................................................................... 1

III.    LEGAL STANDARD .................................................................................. 3

        A.      The Court May Properly Invalidate The '528 Patent Under 35 U.S.C. §
                101 On A Motion To Dismiss Without Claims Construction ................................ 3

        B.      35 U.S.C. § 101:  Two-Step Analysis Under Supreme Court *Alice* Test .............. 5

                1.      Step One:  Are the Claims Directed to an Abstract Idea? ........................ 5

                2.      Step Two:  Do the Claims Recite an Inventive Concept that
                        Transforms the Abstract Idea? .................................................. 6

IV.     ARGUMENT ............................................................................................ 8

        A.      All Claims Of The '528 Patent Are Invalid Under Section 101 ........................... 8

                1.      Step One:  The Asserted Claims Are Directed To An Abstract Idea .......... 9

                2.      Step Two:  The Asserted Claims Lack Additional Features
                        Sufficient To Transform The Abstract Idea ................................. 15

V.      CONCLUSION ........................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   890 F.3d 1354 (Fed. Cir. 2018)..................................................................................7

*Affinity Labs of Texas, LLC v. Amazon.com, Inc.*,
   No. W-15-CV-029, 2015 WL 11622489 (W.D. Tex. Sept. 23, 2015), *aff'd*,
   838 F.3d 1266 (Fed. Cir. 2016)..................................................................................5

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
   109 F. Supp. 3d 916 (W.D. Tex. 2015), *aff'd*, 838 F.3d 1253 (Fed. Cir. 2016)........4, 7, 10, 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ...................................................................................... *passim*

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
   723 F. App'x 989 (Fed. Cir. 2018) ....................................................................... *passim*

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*,
   687 F.3d 1266 (Fed. Cir. 2012)..................................................................................4

*Berkheimer v. HP Inc.*
   881 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020) ...................................4, 7

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008) (*en banc*), *aff'd sub nom. Bilski v. Kappos*, 561
   U.S. 593 (2010)..................................................................................3, 4, 10, 12

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)..................................................................................6, 7

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014)..................................................................................5

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 983 (2020).........................................4

*Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014).......................................................................... *passim*

*Credit Acceptance Corp. v. Westlake Servs.*,
   859 F. 3d 1044 (Fed. Cir. 2017)..................................................................................11

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
   558 Fed. App'x 988 (Fed. Cir. 2014)..................................................................................3

*CyberSource v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011)........................................................................6, 12

*Dealertrack Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012)..............................................................................9

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)............................................................................12

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)..............................................................................9

*Gottschalk v. Benson*,
409 U.S. 63 (1972)................................................................................................12

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016)......................................................................10, 12

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343, 2015 WL 3852975 (Fed. Cir. 2015) ..............................................5

*Interval Licensing v. AOL, Inc.*,
896 F.3d (Fed. Cir. 2018)......................................................................................17

*Mayo Collaborative Servs. v. Prometheus Labs.*,
Inc., 566 U.S. 66 (2012)......................................................................................6, 7

*Morales v. Square, Inc.*,
75 F.Supp.3d 716 (W.D.Tex.2014).......................................................................5, 6

*Move, Inc. v. Real Estate All. Ltd.*,
721 F. App'x 950 (Fed. Cir. 2018) .......................................................................10

*Network Apparel Grp., LP v. Airwave Networks Inc*.,
No. 6:15-CV-00134, 2016 WL 4718428 (W.D. Tex. Mar. 30, 2016), *aff'd*,
680 F. App'x 1003 (Fed. Cir. 2017) ............................................................4, 10, 17

*Planet Bingo, LLC v. VKGS LLC*,
576 F. App'x 1005 (Fed. Cir. 2014) .....................................................................12

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017)......................................................................8, 14, 15

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016)......................................................................6, 15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)............................................................................18

*Ultramercial, Inc. v. Hulu LLC*,
    722 F.3d 1335 (Fed. Cir. 2013)................................................................................4, 5

*Voit Techs., LLC v. Del-Ton, Inc.*,
    757 F. App'x 1000 (Fed. Cir. 2019) ........................................................................4, 19

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
    887 F.3d 1376 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 813, 202 L. Ed. 2d
    577 (2019) ...........................................................................................................................4

*Whitepages, Inc. v. Isaacs*,
    196 F. Supp. 3d 1128 (N.D. Cal. 2016) ...............................................................13

**Statutes**

35 United States Code § 101.................................................................................. *passim*

**Other Authorities**

Federal Rules of Civil Procedure 12(b)(6)................................................................1, 7

iv

## I.      INTRODUCTION

Defendant Brightpearl, Inc. ("Brightpearl") moves to dismiss the Complaint (Doc. 1)

with prejudice because all the claims of U.S. Patent No. 9,934,528 ("'528 Patent") asserted by

Plaintiff Scanning Technologies Innovations, LLC ("Plaintiff"), are directed to patent ineligible

subject matter and are, therefore, invalid.

The Supreme Court directs that patents may not claim an abstract idea, and those that do

are unpatentable under 35 U.S.C. § 101.  The claims of the '528 Patent are directed to the

abstract idea of inventory management by scanning a symbol relating to an article and then

looking-up information about that article.  The claims contain no additional limitations beyond

the abstract idea that can supply an inventive concept sufficient to render the claims patent-

eligible.  As admitted throughout the specification of the '528 Patent, the claims only recite well-

known, conventional, and generic elements, arranged in a conventional manner.  As the Supreme

Court, the Federal Circuit, and numerous district courts have held, implementing an abstract idea

with generic components is not sufficient to transform an abstract idea into a patent-eligible

invention.  This case is no exception.

Resolving this issue does not require discovery or claim construction.  Because the

'528 Patent claims patent-ineligible subject matter, Brightpearl hereby requests that the Court

conserve judicial and party resources and dismiss Plaintiff's Complaint in its entirety with

prejudice under Fed. R. Civ. P. 12(b)(6).

## II.     THE '528 PATENT

Plaintiff's Complaint alleges that Brightpearl infringed U.S. Patent No. 9,934,528,

entitled "Systems and Methods For Indicating The Existence Of Accessible Information

Pertaining To Articles Of Commerce."  The '528 Patent is directed to the abstract concept of

inventory management, *i.e.*, "enabling a mobile device to indicate the existence of accessible

information about an identified article of commerce."  *See* Doc. 1-2 at 1:31-34.

The '528 Patent discloses that, under the then current state of technology, it was common for mobile devices with scanners for scanning and decoding Universal Product Codes (UPCs) or other "symbologies" on articles of commerce, to connect to the Internet and to retrieve information about those articles of commerce.  *Id*. at 1:61-66.  The '528 Patent describes this as problematic because of the time taken to connect to the Internet, which leads to the user having to wait for a few minutes before retrieving information about articles of commerce. *Id*. at 1:67-2:4.  The '528 Patent's alleged solution to the problem is an inventory management system where the information about the articles for sale are simply downloaded and maintained offline in the local memory of the mobile device so the information can be accessed more quickly.  *Id*. at 11:6-12.  The '528 Patent describes mere implementation of existing communication protocols and downloading a look-up table including information related to an article of commerce.  *Id*. at 4:20-49.  The '528 Patent does not disclose or describe how its alleged invention improve upon the systems and methods admittedly already in existence.  The claims of the '528 Patent cover different aspects of systems and methods of accessing information about articles for sale.

Claim 1 describes how the patentee claimed this alleged solution[1]:

1.      A system for indicating an existence of a link to information pertaining to an article of commerce, the system comprising:

a mobile device comprising a portable handheld housing and a communication interface configured to enable the mobile device to communicate with a communication network,

---

[1] The other independent claims of the '528 Patent (Claims 7, 12 and 17) contain minor differences in terminology as Claim 1 but are directed to the same concepts as Claim 1.  The dependent claims do not add any meaningful limitations.  Claim 1, along with its dependent claims 2-6, is directed to a system.  Claim 7, along with its dependent claims 8-11, is directed to its corresponding method.  Claim 13 is directed to a mobile device that otherwise recites the same elements as Claim 1.  Claim 17 is directed to a non-transitory computer readable medium containing the same limitations as the other independent Claims 1, 7 and 12.

the mobile device further comprising a signal processing device and a visual input device, the visual input device affixed within the portable handheld housing;

digital files associated with the mobile device;

a server in communication with the communication network, the server comprising a server database configured to store a look-up table also storing a plurality of information link indicators, each information link indicator associated with a respective symbology and article of commerce, and each information link indicator being configured as a status signal indicating the existence or absence of a link to information pertaining to a respective article of commerce, the link being made to the information via the communication network;

wherein the visual input device is configured to scan an image of an article of commerce, decode the image to obtain a symbology and forward data from the scanned image to the signal processing device;

wherein, in response to receiving the symbology, the signal processing device is configured to look up the symbology in the look-up table to determine from a respective information link indicator whether or not a link exists for accessing information pertaining to an article of commerce associated with the symbology via the communication network, wherein the signal processing device determines whether or not the link exists without accessing the communication network.

*Id.* at 11:46-12:16.

## III.    LEGAL STANDARD

### A.    The Court May Properly Invalidate The '528 Patent Under 35 U.S.C. § 101 On A Motion To Dismiss Without Claims Construction

Patentability under 35 U.S.C. § 101 ("Section 101") is a threshold legal issue which should be resolved at the onset of litigation, rather than later, in order to conserve judicial and party resources.  Early resolution is both appropriate and available because the issue of patentable subject matter is purely an issue of law.  *See In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) (*en banc*), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010).

Claim construction is not a prerequisite to determining patent eligibility.  *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. App'x 988, 992 n.1 (Fed. Cir. 2014) ("There is no requirement that the district court engage in claim construction before deciding § 101 eligibility."); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n,*

776 F.3d 1343, 1349 (Fed. Cir. 2014) ("claim construction is not an inviolable prerequisite to a

validity determination under § 101); *Ultramercial, Inc. v. Hulu LLC*, 722 F.3d 1335, 1339 (Fed.

Cir. 2013) (no rule requiring district courts to construe claims before determining § 101

eligibility); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266,

1273 (Fed. Cir. 2012) (claim construction is not a prerequisite to a validity determination under §

101); *see also, e.g.*, *Bilski*, 561 U.S. at 593 (finding subject matter ineligible for patent protection

without claim construction).

The Federal Circuit has confirmed that, although determination of validity under

Section 101 may involve a factual question, "not every § 101 determination contains genuine

disputes over the underlying facts." *Berkheimer v. HP Inc*. 881 F.3d 1360, 1368

(Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020).  The Federal Circuit has often affirmed

dismissals on Section 101 grounds where there are no underlying factual issues related to

whether claim elements are well-understood, routine and conventional.  *See, ChargePoint, Inc. v.

SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 983 (2020); *Voit

Techs., LLC v. Del-Ton, Inc.*, 757 F. App'x 1000, 1004 (Fed. Cir. 2019); *Automated Tracking

Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 995 (Fed. Cir. 2018); *Voter Verified, Inc. v.

Election Sys. & Software LLC*, 887 F.3d 1376, 1386 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct.

813, 202 L. Ed. 2d 577 (2019).

Indeed, courts in the Western District of Texas regularly determine Section 101 patent-

eligibility at the pleadings stage.  *See, e.g.*, *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 109 F.

Supp. 3d 916, 928 (W.D. Tex. 2015), *aff'd*, 838 F.3d 1253 (Fed. Cir. 2016) (finding claims

directed to streaming regional content to users outside of the geographic region an abstract idea

and invalid under § 101); *Network Apparel Grp., LP v. Airwave Networks Inc*., No. 6:15-CV-

00134, 2016 WL 4718428, at *2 (W.D. Tex. Mar. 30, 2016), *aff'd*, 680 F. App'x 1003 (Fed. Cir.

2017) (finding claims directed to incentivizing end users to acknowledge receipt of emails

invalid under § 101); *Affinity Labs of Texas, LLC v. Amazon.com, Inc.*, No. W-15-CV-029, 2015

WL 11622489, at *3 (W.D. Tex. Sept. 23, 2015), *aff'd*, 838 F.3d 1266 (Fed. Cir. 2016) (finding

claims directed to wirelessly communicating selective information to an electronic device invalid

under § 101).  The Federal Circuit routinely upholds patentability analysis conducted at the

pleadings stage.  *See, e.g.*, *Content Extraction*, 776 F.3d at 1349 (affirming grant of motion to

dismiss); *Ultramercial*, 772 F.3d at 717 (affirming grant of motion to dismiss); *buySAFE, Inc. v.*

*Google, Inc.*, 765 F.3d 1350, 1351-52 (Fed. Cir. 2014) (affirming judgment on the pleadings).

    **B.**    **35 U.S.C. § 101:  Two-Step Analysis Under Supreme Court *Alice* Test**

Section 101 defines patentable subject matter as "any new and useful process, machine,

manufacture, or composition of matter, or any new and useful improvement thereof."  The

Supreme Court has explained that Section 101 "contains an important implicit exception:  Laws

of nature, natural phenomena, and abstract ideas are not patentable."  *Alice Corp. Pty. Ltd. v.*

*CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).  To determine whether patent claims are directed

to one of these ineligible subject matter areas, the Supreme Court set forth a two-step test that

asks:  (1) whether the claims are directed to an abstract idea, such as a fundamental practice or a

process that could be performed mentally; and, if so, (2) whether the claims recite an inventive

concept that transforms the abstract idea into a patent-eligible application.  *Id*. at 2355.

    **1.**    **Step One:  Are the Claims Directed to an Abstract Idea?**

The Federal Circuit has explained that "we start [the § 101 analysis] by ascertaining the

basic character of the subject matter [.]"  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d

1343, 1348, 2015 WL 3852975, at *4 (Fed. Cir. 2015); *see also Morales v. Square, Inc*., 75

F.Supp.3d 716, 724 (W.D. Tex. 2014) ("In determining whether a claim is directed to an abstract

idea, courts look past the claim language to "*the purpose of the claim-in other words*, what the invention is trying to achieve.'") (citation omitted).  The abstract idea exception to Section 101 embodies "the longstanding rule that an idea of itself is not patentable."  *Id*.  Examples of abstract ideas include "[f]undamental . . . practices long prevalent in our system of commerce," "methods of organizing human activity," and "methods [that] can be performed mentally, or which are the equivalent of human mental work."  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285–86 (Fed. Cir. 2018) (*citing Alice*, 134 S. Ct. at 2356) (internal quotations omitted); *CyberSource v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011).

While specific processes for improving computing capabilities may be patentable, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Alice*, 134 S. Ct. at 2358.  Therefore, claims that "simply add[] conventional computer components to well-known business practices" or that recite "generalized steps to be performed on a computer using conventional computer activity" are still abstract and invalid under Section 101.  *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016).

### 2.     Step Two:  Do the Claims Recite an Inventive Concept that Transforms the Abstract Idea?

Once a patent is found to be directed to an abstract idea under Step One, the court asks "[w]hat else is there in the claims before us?"  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77 (2012).  The patent is invalid unless the claims recite an "'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."  *Alice*, 134 S. Ct. at 2355 (alterations in original).  Simply "appending conventional steps" or trivial limitations, such as "conventional or obvious pre-solution activity" or "insignificant post-

solution activity," does not add an "inventive concept." *Mayo*, 132 S. Ct. at 1298.

The "inventive concept" must also be more than an instruction to apply an abstract idea on a computing device. *Alice*, 134 S. Ct. at 2357. A claim wherein "each step does no more than require a generic computer to perform generic computer functions" is not inventive. *Id*. at 2359. Moreover, "merely reciting components more specific than a generic computer does not preclude a claim from being directed to an abstract idea." *BSG Tech*, 899 F.3d at 1289. Rather, for the "role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Content Extraction*, 776 F.3d at 1347-48 (alterations omitted).

Whether a claim element is well-understood, routine, and conventional is a question of fact. *Berkheimer*, 881 F.3d at 1369. However, the specification and intrinsic record aid in a Step Two analysis of what was well-known, routine, and conventional at the time of the invention. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1356 (Fed. Cir. 2018); *see also Automated Tracking Sols., LLC*, 723 at 995 (affirming Rule 12 motion under § 101 when the specification indicated that claimed components were conventional). The Court may also take note of fundamental technological developments and economic concepts in its analysis. *Affinity Labs*, 838 F.3d at 1270 (finding no error in the court's findings regarding what was well-known before the priority date of the patent). "When there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, or conventional to a skilled artisan in the relevant field, this issue can be decided as a matter of law." *Berkheimer*, 881 F.3d at 1368.

## IV.     ARGUMENT

### A.     All Claims Of The '528 Patent Are Invalid Under Section 101

The claims of the '528 Patent are invalid under Section 101 because they fail both steps of the Supreme Court's two-step test outlined in *Alice*.

This case does not present a factual issue that would preclude resolution of this motion. The '528 Patent admits throughout the specification that the claims recite well-understood, routine and conventional technology.  The Federal Circuit "has determined claims to be patent-ineligible at the motion to dismiss stage based on intrinsic evidence from the specification without need for 'extraneous fact finding outside the record.'"  *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912-13 (Fed. Cir. 2017) (citing *In re TLI Commc'ns*, 823 F.3d at 613–14); *Content Extraction*, 776 F.3d at 1348.

For purposes of this motion, Claim 1, as also expressly alleged in the Complaint, is representative of the claims of the '528 patent.  The Federal Circuit has recognized that it is appropriate in determining patent-eligibility to focus on a representative claim where all the claims are "substantially similar and linked to the same abstract idea."  *Content Extraction*, 776 F.3d at 1348 (internal quotations omitted).  The '528 Patent lists four independent claims, claims 1, 7, 12 and 17.  Although directed to a system, method, and mobile device respectively, these claims embody the same concepts: storing a look-up table, scanning and decoding an image of or associated with an article of commerce, and looking up the decoded symbology without accessing the communication network.  The dependent claims do not recite any meaningful limitations, instead they only recite features such as describing a visual output (claims 2, 8, 13, 18), audio output (claims 3, 9, 14, 19), information access via hyperlinks (claims 4, 11, 15, 21), automatic updates to the lookup table (claims 5, 10, 20), and storage of descriptors (claims 6, 16).  Accordingly, all of the '528 Patent's claims should fall together on subject-matter eligibility

because they are substantially similar to Claim 1.

1.      **Step One:  The Asserted Claims Are Directed To An Abstract Idea**

Claim 1 of the '528 patent is directed to the abstract idea of inventory management by scanning a symbol relating to an article and then looking-up information about that article.

The '528 Patent provides no technological improvement.  The '528 patent does not describe or claim any improved computer functionality or improved method or system for scanning technology, or decoding scanned images, or any particular improvement to the use of a look-up table.  As discussed in more detail under Step Two of the analysis, implementation of an "information link indicator" do not provide a technological improvement as it is nothing more than a status signal and thus itself an abstract idea.  To the contrary, the '528 patent often states how these activities are performed using "standard and existing computer processing power and software solutions."  *See, e.g.*, Doc. 1-2 at 11:22-23.  This is the case also for the recited off-line access "without accessing the communication network" that the '528 patent describes as being implemented with the use of ordinary technology such as known portable device with a local storage capabilities.  *See, e.g.*, Doc. 1-2 at 3:42-58.  The claims also "do[] not specify how" the system is "specially programmed to perform the steps claimed in the patent."  *Dealertrack Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (citation omitted).

Claim 1 should therefore be found invalid because it falls into three well-known categories of abstract idea that have been articulated by the Federal Circuit as being independently fatal to the '528 patent under *Alice* step one.  *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334-35 (Fed. Cir. 2016) (noting that it is sufficient to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases").  First, Claim 1 is directed to inventory management, which itself is a fundamental economic practice routinely performed by merchants and long pervasive in retail commerce.  Second, Claim 1 embodies a

9

mental process that can be performed by hand, using pen and paper.  Third, Claim 1 is geared toward the mere collection, decoding, and identification of information.  Each of these categories is addressed in detail below.

> **a.     The claims are directed to a fundamental economic practice of inventory management**

Claim 1 is directed to the abstract idea of inventory management, which is a fundamental economic practice routinely performed by merchants and long pervasive in retail commerce.

"The category of abstract ideas embraces 'fundamental economic practice[s] long prevalent in our system of commerce,' . . . including 'longstanding commercial practices[s]' and 'methods[s] of organizing human activity.'"  *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016)(citing *Alice,* 573 U.S. at 219).

In *Alice*, the Supreme Court found the concept of intermediated settlement "'a fundamental economic practice long prevalent in our system of commerce' ... [and] an 'abstract idea' beyond the scope of § 101."  573 U.S. at 219.  Similarly, in *Bilski*, the Supreme Court held that the basic concept of hedging was "a fundamental economic practice long prevalent in our system of commerce."  *Bilski*, 561 U.S. at 611 (internal citations omitted).  Based on this precedent, courts routinely find claims directed to fundamental economic practices to cover patent-ineligible subject matter.  *See, e.g., Content Extraction,* 776 F.3d at 1348 (finding a claim directed to an abstract idea under *Alice* step one because it was directed to functions that "humans have always performed.");  *Network Apparel*, 2016 WL 4718428 at *6 (finding claims directed to "incentivizing an end user to acknowledge the receipt of a message is both well-known and historically longstanding" and abstract idea invalid under of  § 101);  *Affinity Labs*, 109 F. Supp. 3d at 924 ("the dissemination of regionally broadcast[ed] content to users outside the region . . . is a well-known, longstanding commercial business practice[.]").  *See also Move,*

*Inc. v. Real Estate All. Ltd.*, 721 F. App'x 950, 955 (Fed. Cir. 2018) (affirming invalidity for claims relating to methods for locating available real estate properties using zoom-enabled map on computer as directed to a "commercial practice" and thus an abstract idea); *Credit Acceptance Corp. v. Westlake Servs.*, 859 F. 3d 1044, 1054 (Fed. Cir. 2017) (finding system and method claims directed to providing financing to allow a customer to purchase a product selected from an inventory of products maintained by a dealer to be a financial industry practice similar to the concept of intermediated settlement that was held to be abstract in *Alice*).

As exemplified in the '528 Patent, Claim 1 involves the basic steps of scanning and decoding symbols on articles of commerce, retrieving information about the articles from a look-up table and presenting that information to the user. Doc. 1-2 at 10:8:22; Fig. 4B. This is nothing more than a system to track what is being sold, inventory levels, and general information regarding the item in inventory such as description, quantity, price, color, location and like information. This system and process has long been used by merchants to manage their inventory. Prior to the advent of computer technology, it was ubiquitous for a merchant to simply create a ledger and track inventory by hand. Even the computerized implementation of inventory management has become common practice as it can provide more accurate, quicker access to the information.

Claim 1 recites a series of generic computer components to carry out this fundamental economic practice that the '528 Patent evidences are well-known in the industry and thus do not transform Claim 1 into patent eligible subject matter as they provide no technological improvement. The '528 Patent states that "[t]he use of an image sensor to read symbology, *e.g.*, a barcode, is known in the art and systems employing such technology, for example, are commercially available from Symbol Technologies of New York." Doc. 1-2 at 8:5-8. A barcode

scanner can perform all the steps of basic inventory management, such as scanning a symbol on an article of commerce, decoding a symbol and retrieving information about the symbol from a look-up table and presenting that information.  The '528 Patent also recognizes that various communications technologies are frequently built into portable media devices such as mobile phones that can be used to retrieve product information and that standard decoding techniques were known to look-up articles of commerce.  *Id*. at 1:48-66 and 11:22-28.

Accordingly, Claim 1 of the '528 Patent, directed an inventory management system, defines a fundamental economic practice.  Therefore, just like the concepts of hedging in *Bilski* and intermediated settlement in *Alice*, Claim 1 of the '528 Patent is direct to a non-patent eligible abstract idea.  *Alice*, 573 U.S. at 220.

### b.     The claims are directed to a mental process

Claim 1 is directed to an abstract idea because, even though it involves a computerized system, the claim is directed to a "metal process" that can be, and has been, performed by humans in a non-computerized fashion, either mentally or with pen and paper.  *See CyberSource*, 654 F.3d at 1372; *see also Intellectual Ventures I*, 838 F.3d at 1322; *see also Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).  The Federal Circuit treats "analyzing information by steps people can go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category."  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

The method of managing inventory embodied in Claim 1 is identical to what merchants have long done in a physical ledger and thus an abstract idea.  *See, e.g.*, *Content Extraction*, 776 F.3d at 1347 (finding a claim directed to an abstract idea under *Alice* step one because it was directed to functions that "humans have always performed"); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014) (affirming as abstract claims that "consist[ed] solely

of mental steps which can be carried out by a human using pen and paper").  *See also*

*Whitepages, Inc. v. Isaacs*, 196 F. Supp. 3d 1128, 1133-34 (N.D. Cal. 2016) (finding that claims

directed to looking up a name associated with a phone number defined a process that "humans

can perform by sliding a finger down the columns of a phone book" and thus suggested that it

"qualifies as an 'abstract idea' for which computers are invoked merely as a tool.") (internal

citations omitted).

Claim 1 recites no improvement over an individual simply running his or her finger down

a ledger to locate the desired information and instead is simply directed to an abstract idea.  In

fact, in addition to being able to memorialize the process step of Claim 1 in a ledger by hand as it

has been customarily done by merchants, the inventory management of Claim 1 could even be

replicated purely in someone's head.  A retailer could simply read a certain symbology, in his or

her mind correlate the symbology to a product from an inventory list, and identify whether

further information related to that product exists.  Thus, implementing these mental activities in a

computing environment and stating "apply it" on a mobile device as done by the '528 patent is

insufficient to render patentable this abstract idea to which Claim 1 is directed.  *Cf. Alice*, 573

U.S. at 221 (quoting *Mayo*, 566 U.S. at 72) (holding that a patent-eligible application requires

"more than simply stating the abstract idea while adding the words 'apply it.'").

Accordingly, Claim 1 is directed to an abstract idea under *Alice* step one because it

merely claims a mental process which is not entitled to patent protection under Section 101.

        **c.**       **The claims are directed to simply collecting and identifying information**

Claim 1 is directed to an abstract idea because it is directed to nothing more than

collecting and identifying data using standard equipment in an ordinary manner.  Scanning and

decoding of symbols to look up inventory information amounts to nothing more than data

management.  The '528 Patent disclosure makes clear that the basic character of the subject

matter of the invention is a system and method for scanning symbols, such as barcodes and UPC

codes, to determine the existence of inventory information.  *See, e.g.*, Doc. 1-2 at 2:50-61.  The

'528 Patent also does not evidence that there is anything extraordinary about the equipment used.

In this respect Claim 1 is very similar to claims that the courts have time and again found to be

directed to abstract ideas.

For example, Claim 1 is analogous to the claims in *Automated Tracking* that also

involved "inventory control" and which the Federal Circuit found to be patent ineligible subject

matter.  723 F. App'x at 991-92.  In *Automated Tracking*, the patent tracked items using a radio-

frequency identification system that collected data from sensors, analyzed that data, and

determined results based on the analysis of data.  *Id.* at 993.  There, the court concluded that the

idea of locating, identifying or tracking an object using existing radio-frequency identification

system technology without requiring any "particular configuration or arrangement" was abstract.

723 F. App'x at 991-994.

Claim 1 also parallels claims the Federal Circuit reviewed in *Secured Mail Solutions*

*LLC*, 873 at 911.  The Court in *Secured Mail* assessed different sets of patents.  One set of the

reviewed patents listed claims directed to method where a barcode is generated, affixed to a mail

object, sent via mail, scanned upon receipt, and data related to the sender is then sent to the

recipient over a network and displayed.  *Id. at* 910.  Another set of the patents reviewed in

*Secured Mail* listed claims directed to a personalized network address affixed to a mail object the

mail object is then submitted to the carrier, and once received, a request is made by the recipient

over the network using the personalize network address, and data is displayed on the screen.

*Id.* at 911.  The Federal Circuit noted that the claims there were "not directed to a new barcode

format, an improved method of generating or scanning barcodes, or similar improvements in computer functionality" and determined that the claims form both sets of patents were invalid as directed to "the abstract process of communicating information about a mail object using a personalized marking." *Id.* at 910-911.  The same invalidity determination is warranted for Claim 1 of the '528 patent, which, as reflected even by allegations in the Complaint at ¶¶ 20-23, simply attempts to communicate the abstract idea regarding the existence or absence of inventory information as determined by a status signal.

From the above comparisons, therefore, it is apparent that Claim 1 is directed to an abstract idea under *Alice* step one and not entitled to patent protection under Section 101.

### 2.  Step Two:  The Asserted Claims Lack Additional Features Sufficient To Transform The Abstract Idea

Claim 1 fails *Alice* step two because it fails to claim anything that transforms the invalid abstract idea of inventory management described above.  No inventive concept can be identified from Claim 1's language independent of whether the limitations are considered individually or in ordered combination.

"Mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of well-understood, routine, conventional activit[ies] previously known to the industry." *In re TLI Commc'ns LLC Patent Litig*., 823 F.3d 607, 613 (Fed. Cir. 2016) (citing *Alice*, 134 S. Ct. at 2359 (internal quotations omitted)).

Claim 1 does not recite a technological improvement to scanning technology, decoding scanned images, or use of a look-up table.  To the contrary, Claim 1 simply  recites well-understood, routine and generic components arranged in a conventional manner.

The '528 patent acknowledges and thus settles any potential factual dispute that each

element of Claim 1 is directed to well-understood, routine, and generic component used in the ordinary manner.  *See Automated Tracking*, 723 F. App'x at 994-95 (finding no factual dispute regarding whether the claims recited routine and convention components where the "specification also more pointedly indicates that the recited components of the claimed RFID system were conventional.")

Claim 1 recites a mobile device having a visual input.  The Complaint equates this to a barcode scanner and an iPad.  *See* Doc. 1 at ¶ 16.  The '528 Patent acknowledges that barcode scanners for scanning and decoding UPC codes on articles of commerce were already well known.  Doc. 1-2 at 1:61-64; 6:14-20; 7:65-8:8; 11:22-28.  The '528 Patent further acknowledges that the patented system and methods may use "existing mobile devices, *e.g.*, mobile phones, digital media playback device, . . . in accordance with the principles of the system and method of the present disclosure."  *Id.* at 8:54-57.

Claim 1 also recites a generic communication network and server with a database and look-up table.  The '528 Patent likewise describes these as generic components.  *Id*. at 9:11-16 ("It is to be appreciated that the network 302 may be a local area network (LAN), wide area network (WAN), the Internet or any known network that couples a plurality of computers to enable various modes of communication via network messages.").  The '528 Patent also states that "the server 304 may communicate using various known protocols." *Id.* at 9:17-18.

Claim 1 further recites the scanning and decoding of an article of commerce, which are well known functionalities of a scanner as also discussed in the background of the '528 Patent. *Id.* at 1:61-2:6.  The '528 Patent also describes scanning and decoding an image to involve "standard and existing computer processing power and software solutions."  *Id.* at 11:22-28; *see also id*. at 8:5-8 ("[t]he use of an image sensor to read symbology, *e.g.*, a barcode, is known in

the art and systems employing such technology, for example, are commercially available from Symbol Technologies of New York.").

Finally, Claim 1 recites the use of a look-up table, which is present in inventory management systems described in the background of the '528 Patent and which the '528 Patent describes as "typical."  *Id.* at 1:61-2:6; 3:59-65; and 4:20-28.

Thus, as determined in *Automated Tracking*,  Claim 1 lacks inventive concept.  723 F. App'x at 994-95 (finding the claims lacking an inventive concept where the claims directed to an abstract idea recited only conventional RFID system components to carry out data collection and analysis in a routine manner.)

The recited "information link indicator" does not supply the inventive concept transforming the invention into patent-eligible subject matter.  The Complaint equates this element of Claim 1 to the mere indication of whether an item is in stock.  *See, e.g.*, Doc. 1 at ¶ 21 ("a plurality of information link indicators (*e.g.*, product on hand quantity, price, etc.)").  Claim 1 of the '528 Patent describes the "information link indicator" as a "status signal" that "indicates the existence or absence of a link to information pertaining to a respective article of commerce." *Id*. at 11:66-12:3.  The '528 Patent does not describe this feature as improving any aspect of the system, or the decoding and look-up process.  Thus, independent of whether the "information link indicator" is interpreted in the context of the Complaint's allegation or in accordance with the description provided by Claim 1 and the '528 Patent, this element is nothing more than a correlated inventory information and thus also an abstract idea.  *See Interval Licensing v. AOL, Inc.*, 896 F.3d at 1355, 1344 (Fed. Cir. 2018) (holding that "[s]tanding alone, the act of providing someone an additional set of information without disrupting the ongoing provision of initial set of information is an abstract idea.").  *See also Network Apparel*, 2016 WL 4718428 at *8

(finding that the element "access rules" in the asserted claim did not supply an inventive concept where the patent and claim did "not recite how the 'access rules' are created or how the varying levels of access are provided pursuant to those 'access rules.'").

The '528 Patent's solution of downloading the look-up table and retrieving information about an article of commerce "without accessing the communication network" to meet the stated need for "instant gratification" also does not supply an inventive concept.  *See Affinity Labs*, 109 F. Supp. 3d at 924 ("downloadable application with graphical user interface and the graphical user interface, when considered standing alone, does not amount to an inventive concept.").  A mere change in location of data from one place to another cannot supply an inventive concept as copying and storying information on a portable device is also a standard and ordinary operation. This is even acknowledged by the '528 Patent discussing how the invention relies on existing advancements in wireless communication and memory devices to make offline access possible. *Id.* at 3:42-55.  Neither Claim 1 nor the '528 Patent provide any special rules or detail regarding the system. Instead, Claim 1 only generically recites accessing the look-up locally stored information via a mobile device.  The claimed invention itself does not improve wireless technology or the memory functioning in a mobile device.  Rather, the patentee admits that these improvements were already made by others.  *Id.* at 3:42-50.

The ordered combination of elements described in Claim 1 also fails to transform the invention into patentable subject matter because the claim remains a recitation of an abstract idea performed on a set of generic computer components.  There is no inventive concept where a "claim uses a conventional ordering of steps . . . with conventional technology to achieve its desired result."  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).  Considered in combination, the steps of Claim 1 provide an arrangement of

steps that are wholly conventional in order to carry out the abstract idea of scanning technologies for data management purposes.  Describing the system "in accordance with the present disclosure" and referencing Fig. 3, the specification describes a series of generic computer components and network architecture.  *See* Doc. 1-2 at 9:5-8 ("The mobile device 100 communications to a server 304 via a communication network 302.  The device 100 and server 304 may be connected to the communication network 302, *e.g.*, the Internet, by any known means.").  Nothing in the '528 Patent evidences that the particular ordered combination of elements of Claim 1 results in an technological improvement or that the ordered combination improves upon either the storing of the look-up table on the server or accessing the look-up table "without accessing the communication network".  As such, the ordered combination of elements does not transform the abstract idea of Claim 1 into a patentable invention.  *See, e.g.*, *Voit Tech*, 757 F. App'x at 1003-04 (quoting *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015)) ("we have recognized that claims directed to 'improved speed and efficiency inherent with applying the abstract idea on a computer' are insufficient to demonstrate an inventive concept.").

Thus, when analyzing the elements of Claim 1, individually or as a combination, the recitations merely specify conventional mobile device, conventional image-capture and scanning, conventional database lookup, conventional access of information without accessing the communication network, and conventional server communication steps using conventional components and conventional architecture.

## V.    CONCLUSION

For the foregoing reasons, Brightpearl respectfully requests that the Court enter an order dismissing Plaintiff's Complaint with prejudice because the Asserted Claims of Plaintiff's '528 Patent claim patent-ineligible subject matter and are, therefore, invalid.

Date:   April 10, 2020

Respectfully submitted,

DENTONS US LLP

*/s/ Spencer D. Hamilton*
Spencer D. Hamilton
Texas Bar No. 24087656
2000 McKinney Ave., Suite 1900
Dallas, TX 75201
Telephone: (214) 259 0900
Facsimile:  (214) 259 0910
spencer.hamilton@dentons.com

*Attorneys for Defendant Brightpearl, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 10, 2020, a copy of the foregoing was served electronically, via CM/ECF, on all counsel of record who are deemed to have consented such service under the Court's local rules.

*/s/ Spencer D. Hamilton*